# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Robert Rothgaber,                                          :
                                    Petitioner             :
                                                           :
                          v.                               :
                                                           :
Workers' Compensation Appeal                               :
Board (Weaber, Inc.),                                      :    No. 1552 C.D. 2015
                                    Respondent             :    Submitted: February 5, 2016


BEFORE:    HONORABLE RENÉE COHN JUBELIRER, Judge
           HONORABLE ANNE E. COVEY, Judge
           HONORABLE JAMES GARDNER COLINS, Senior Judge


OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE COVEY                                    FILED: July 6, 2016


          Robert Rothgaber (Claimant) petitions this Court for review of the
Workers' Compensation (WC) Appeal Board's (Board) July 28, 2015 order affirming
the Workers' Compensation Judge David Weyl's (WCJ) decision granting Weaber,
Inc.'s (Employer) Petitions for Utilization Review (UR Petitions) and Petition to
Terminate (Termination Petition) Claimant's WC benefits.  The issue before this
Court is whether the WCJ's decision was supported by substantial evidence.[1]  After
review, we affirm.

          Claimant suffered work-related neck and left shoulder injuries on May
25, 2001 for which Employer issued a notice of compensation payable (NCP) and has

---

[1] Claimant lists three issues in his brief for this Court's review: (1) whether the WCJ erred
by relying on Employer's evidence; (2) whether the WCJ erred by disregarding Claimant's
evidence; and, (3) whether the WCJ improperly considered Claimant's alcohol consumption.
Because the issue is whether the Board erred by affirming the WCJ's decision turns upon what
evidence the WCJ relied upon in reaching that determination, we restated Claimant's issues
accordingly.

paid Claimant benefits. Claimant underwent cervical fusion surgery at C5-C6 on March 10, 2005.[2] Effective September 13, 2007, Claimant was entitled to partial disability benefits based upon a light-duty position Employer made available to Claimant.[3] Medical treatments Claimant has undergone since May 2001 have included an ongoing narcotic medication regimen and various injections, the latter of which utilization reviewers have deemed not reasonable and necessary. Specifically, based upon Walter C. Peppelman, Jr., D.O.'s (Dr. Peppelman) May 12, 2011 independent medical evaluation (IME), by November 27, 2012 decision, WCJ Brian Puhala (WCJ Puhala) held that narcotic medications prescribed for Claimant by his family physician Earl H. Brinser, D.O. (Dr. Brinser) since May 6, 2011 were not reasonable and necessary and further created a bodily dependence which is aggravated by Claimant's alcohol consumption.[4] *See* Reproduced Record (R.R.) at 86a-92a.

On or about May 6, 2013, Employer filed a request for utilization review of Stuart A. Hartman, D.O.'s (Dr. Hartman) treatments, including steroid injections and Theramine,[5] OxyContin (20 mg) and Oxycodone (5mg) prescribed since April 23, 2013. On June 20, 2013, utilization reviewer Milton J. Klein, D.O. (Dr. Klein)

---

[2] The plate and screws implanted on March 10, 2005 were removed on November 17, 2005 because one of the screws loosened.

[3] Claimant's employment was terminated in December 2008 due to policy violations. *See* Reproduced Record (R.R.) at 32a, 207a; *see also* Claimant Br. at 7, 18 and Employer Br. at 1, 8. Claimant currently receives partial disability benefits consistent with the sedentary job he performed for Employer before he was fired. *See* WCJ Dec. at Finding of Fact 16.

[4] On May 22, 2014, the Board remanded the matter to WCJ Puhala for specific findings and a credibility determination regarding the utilization reviewer's report. Thus, at the time the WCJ's decision was issued on August 20, 2014, WCJ Puhala's November 27, 2012 decision relating to Dr. Brinser's treatments was on remand. *See* R.R. at 155a-162a, 205a. The Board stated in its opinion that WCJ Puhala's March 11, 2015 decision after remand deemed the reviewer's report not credible and, thus, WCJ Puhala determined that Claimant's narcotic prescriptions were not reasonable and necessary. *See* Board Dec. at 1 n.1.

[5] Theramine is a health food/nutritional supplement. *See* R.R. at 127a, 200a.

2

determined that Dr. Hartman's treatments since May 16, 2013 were reasonable and necessary. On July 8, 2013, Employer appealed from Dr. Klein's determination.

On or about August 1, 2013, Employer filed a request for utilization review (UR) of Claimant's prolotherapy treatments by Peter J. Blakemore, D.O. (Dr. Blakemore) in 2012.[6] On September 24, 2013, utilization reviewer Frank G. Farone, D.O., M.P.H. (Dr. Farone) determined that Claimant's prolotherapy injections after August 6, 2012 were not reasonable and necessary.

On October 7, 2013, Claimant underwent a second IME with Dr. Peppelman resulting in Dr. Peppelman's declaration that Claimant had fully recovered from his work-related injury, and that Dr. Blakemore's prolotherapy and Dr. Hartman's Theramine treatments, narcotics prescriptions and steroid injection referrals were not reasonable and necessary.

On November 14, 2013, Employer filed its Termination Petition, averring that Claimant had fully recovered from his May 2001 work injury as of October 7, 2013, and was able to return to work without restriction. *See* R.R. at 113a-114a. Claimant denied Employer's allegations.

Employer's UR Petitions and Termination Petition were consolidated for purposes of litigation and decision. WCJ hearings were held on November 22, 2013 and May 22, 2014. By August 20, 2014 decision, the WCJ granted Employer's UR Petitions and Termination Petition. Claimant appealed to the Board. On July 28, 2015, the Board affirmed the WCJ's decision. Claimant appealed to this Court.[7]

---

[6] Prolotherapy consists of injecting foreign irritants (*i.e.*, sugar, phenols, cod liver oil) into a painful area with the intended result that the irritation caused by the injected materials will cause an inflammatory response which the body would be stimulated to heal. *See* R.R. at 131a-132a.

[7] "On review[,] this Court must determine whether constitutional rights were violated, errors of law were committed, or necessary findings of fact were supported by substantial competent evidence." *Stepp v. Workers' Comp. Appeal Bd. (FairPoint Commc'ns, Inc.)*, 99 A.3d 598, 601 n.6 (Pa. Cmwlth. 2014).

3

Initially, Section 306(f.1)(1)(i) of the WC Act (Act)[8] requires that employers pay "for reasonable surgical and medical services, services rendered by physicians or other health care providers . . . medicines and supplies, as and when needed." 77 P.S. § 531(1)(i). Employers must pay a claimant's medical bills within 30 days of receiving them, "unless the employer or insurer disputes the reasonableness or necessity of the treatment provided pursuant to [Section 306(f.1)(6) of the Act, 77 P.S. § 531(6)]." 77 P.S. § 531(5). "In a UR proceeding, an employer has the never-shifting burden of refuting the provider's testimony and establishing that the **challenged medical treatment is unreasonable or unnecessary**." *Jackson v. Workers' Comp. Appeal Bd. (Boeing)*, 825 A.2d 766, 771 (Pa. Cmwlth. 2003) (emphasis added). "In meeting its burden, the employer's medical evidence must address the specific treatment currently under review." *Gary v. Workers' Comp. Appeal Bd. (Phila. Sch. Dist.)*, 18 A.3d 1282, 1288 (Pa. Cmwlth. 2011).

> Section 306(f.1)(6) of the Act, . . . sets forth the procedure to be followed regarding disputes as to the reasonableness or necessity of treatment by a health care provider, stating that:
>
> . . . .
>
> > (iv) If the provider, employer, employe or insurer disagrees with the finding of the [UR] organization, a petition for review by the [D]epartment [of Labor and Industry (Department)] must be filed within thirty (30) days after receipt of the report. The [D]epartment shall assign the petition to a [WCJ] for a hearing or for an informal conference under [S]ection 402.1 [of the Act, 77 P.S. § 711.1[9]]. The [UR] report shall be part of the record before the [WCJ]. The [WCJ] shall consider the [UR] report as evidence but shall not be bound by the report.
>
> 77 P.S. § 531(6)[][].

[8] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1 - 1041.4, 2501-2708.
[9] Section 402.1 of the Act was added by Section 13 of the Act of June 24, 1996, P.L. 350.

*Marek v. Workers' Comp. Appeal Bd. (Logistics Exp., Inc.)*, 96 A.3d 434, 437 (Pa. Cmwlth. 2014). "The [UR] hearing before the [WCJ] shall be a de novo proceeding." 34 Pa. Code § 127.556; *see also* 34 Pa. Code § 127.670(a).

> Further, Section 413(a) of the Act states, in pertinent part:
>
> A [WCJ] designated by the [D]epartment may, at any time, . . . terminate a [NCP], . . . upon petition filed by either party with the [D]epartment, upon proof that the disability[10] of an injured employe has . . . temporarily or finally ceased . . . . Such . . . termination shall be made as of the date upon which it is shown that the disability of the injured employe has . . . temporarily or finally ceased . . . .

77 P.S. § 772. "To succeed in a termination petition, an employer bears the burden of proving by **substantial evidence** that a claimant's disability ceased, or **any remaining conditions are unrelated to the work injury**." *Westmoreland Cnty. v. Workers' Comp. Appeal Bd. (Fuller)*, 942 A.2d 213, 217 (Pa. Cmwlth. 2008) (emphasis added). The burden is substantial since disability is presumed to continue unless and until proved otherwise. *Giant Eagle, Inc. v. Workmen's Comp. Appeal Bd. (Chambers)*, 635 A.2d 1123 (Pa. Cmwlth. 1993).

> In a case where the claimant complains of continued pain, this burden is met when an employer's **medical expert unequivocally testifies** that it is his opinion, within a reasonable degree of medical certainty, that the **claimant is fully recovered**, can return to work without restrictions **and that there are no objective medical findings which** either substantiate the claims of pain or **connect them to the work injury**. If the WCJ credits this testimony, the termination of benefits is proper.

---

[10] "Under [the Act], the term 'disability' is synonymous with loss of earning power." *Donahay v. Workers' Comp. Appeal Bd. (Skills of Cent. Pa. Inc.)*, 109 A.3d 787, 792 (Pa. Cmwlth. 2015).

5

*Udvari v. Workmen's Comp. Appeal Bd. (USAir, Inc.)*, 705 A.2d 1290, 1293 (Pa. 1997) (footnote omitted; emphasis added); *see also, Elberson v. Workers' Comp. Appeal Bd. (Elwyn, Inc.)*, 936 A.2d 1195 (Pa. Cmwlth. 2007).

Claimant argues that, since the WCJ improperly relied upon Dr. Peppelman's testimony, disregarded Claimant's and Dr. Hartman's testimony, and inappropriately considered Claimant's alcohol consumption, substantial evidence did not support the WCJ's decision. We disagree.

At the WCJ hearings, Employer offered into evidence in support of the UR Petitions and the Termination Petition, Dr. Peppelman's April 14, 2014 deposition transcript.[11] Dr. Peppelman testified that when he conducted Claimant's October 7, 2013 IME, he confirmed that Claimant's medical history and alcohol use with the narcotic medications had not changed since his May 2011 IME.

Dr. Peppelman recalled Claimant complaining primarily of pain in his neck, but which caused pain between and into his shoulders and "intermittent diffuse numbness and tingling and shooting pains down both [of Claimant's] arms," all of which Claimant related to his May 2001 work injury. R.R. at 125a; *see also* R.R. at 126a. Dr. Peppelman related Claimant's description of neck pain that increased with any type of activity or movement, including driving or overhead activities, and that "none of the treatments -- injections, surgeries, therapies -- have provided him any relief." R.R. at 127a.

Dr. Peppelman stated that, on October 7, 2013, Claimant's neck and spine and his neurological examinations were "within normal limits, except for some subjective make/break weakness, which is a finding of inappropriate illness behavior." R.R. at 130a. Dr. Peppelman noted that Claimant's neck range of motion

[11] Dr. Peppelman confirmed that all of his opinions were offered within a reasonable degree of medical certainty. *See* R.R. at 136a, 144a.

6

was better than it was at the May 2011 IME. Dr. Peppelman opined that Claimant "continues to have chronic subjective complaints of pain, [for] which there's no objective evidence of impairment . . . to any degree." R.R. at 130a. He concluded, as he did after Claimant's May 2011 IME, that Claimant reached maximum medical improvement, *see* R.R. at 131a, but further added that Claimant had recovered from his work injury. *See* R.R. at 136a.

Regarding Dr. Blakemore's prolotherapy treatments, Dr. Peppelman recalled Claimant admitting to him that "additional prolotherapy treatments . . . really haven't helped." R.R. at 127a. Dr. Peppelman also represented:

> There's no long-term literature that supports the use of it. The actual mechanism of the proposed theory is still not really well understood or well-known; and really, [Claimant] has been having these [treatments] for an extended period of time, and if they have not helped do what they are . . . theorized to do at this point in time, they are not going to do so in the future. So, they are not beneficial to [Claimant].

R.R. at 131a-132a. Accordingly, Dr. Peppelman agreed with Dr. Farone's September 2013 determination that Claimant's prolotherapy after August 6, 2012 is not reasonable and necessary.

Dr. Peppelman reported relative to Claimant's steroid injections that since, in his opinion, Claimant reached maximum medical improvement: "I do not think that [they] are going to provide [Claimant] any relief on a short-term or long-term basis. . . . [Claimant] was treated with epidural steroid injections in the past and never got any long-term relief . . . , and to do them again at this point in time will fail." R.R. at 133a. Dr. Peppelman further declared that the Theramine nutritional supplement Dr. Hartman prescribed for chronic pain, "really has no proven efficacy . . . it's questionable whether it's of any benefit." R.R. at 127a-128a.

Dr. Peppelman testified that, at the time of the October 2013 IME, Claimant was taking the same narcotic medications prescribed to him by Dr. Brinser in May 2011, which had previously been declared unreasonable and unnecessary based upon Dr. Peppelman's opinion. Dr. Peppelman articulated that his opinion regarding those prescriptions has not changed. He described that narcotics are intended to be used for short periods of time and, unless a patient has a significant anatomic abnormality – such as cancer or other conditions where treatments are limited – prolonged narcotics use is not founded. He explained that when a body becomes dependent upon narcotics, its response to the medications diminishes, requiring a patient to use more and more in order to achieve the same relief. Dr. Peppelman agreed that since "from a radiographic and MRI standpoint and a functional standpoint [Claimant] does not have pathology which would warrant the use of [narcotics]," R.R. at 135a, and their continued use is "not going to improve [his] functionability," R.R. at 134a, Claimant's narcotics use should be discontinued.

Dr. Peppelman was not aware that Claimant had a cervical MRI in December 18, 2013 (*i.e.*, after Claimant's IME) which revealed mild cord compression at the C6-C7 level and bone spurs that were causing cord impingement, but declared that since Claimant's subjective complaints on October 7, 2013 did not include C7 radiculopathy, which is where he would have irritation based upon a C6-C7 problem, Dr. Peppelman attributed the cord compression to Claimant's normal aging process. Dr. Peppelman added that although pinched nerves resulting from cord impingement could be Claimant's pain generator, the pain would be relieved by forward flexion and increased by extension, which was not the case during Claimant's October 7, 2013 IME. Dr. Peppelman maintained that because Claimant's subjective complaints did not match the MRI results, and the MRI results were consistent with Claimant's normal aging process, he would have prescribed a short

8

course of anti-inflammatory medications for flare-ups, rather than long-term narcotics.

Claimant testified at the WCJ hearings that he has treated with Dr. Hartman every two months since April 2013, when he transferred his care from Dr. Brinser.[12] He expressed that Dr. Hartman continued to prescribe the narcotics Dr. Brinser had previously ordered for him, which consists of two OxyContin (20 mg) and four Oxycodone (5mg) per day. Claimant explained: "[Dr. Hartman] basically just prescribes pain medicine. . . . It keeps [my pain levels] . . . to a point where I can stand it. I ain't sitting there wriggling in pain constantly." R.R. at 179a. He recalled that Dr. Hartman sent him for an EMG and an MRI and, based upon the results of those tests, Dr. Hartman referred Claimant to Dr. Monacci at Lancaster Neuroscience who recommended surgery. Claimant stated that he was referred for steroid injections administered by Dr. Lorenzo[13] at C5, C6 and C7, which have afforded him sufficient relief to the point that he was able to reduce his narcotic dosages to normal levels (*i.e.*, from six or seven to four pills per day). *See* R.R. at 174a-175a.

Claimant described that Dr. Blakemore administered his prolotherapy, but since insurance would not cover it, he had to pay for the treatments out-of-pocket. He stated that he voluntarily stopped his prolotherapy before it was completed because he was diagnosed with tonsil cancer for which he underwent surgery in October 2012 with follow-up radiation treatments. Claimant maintains that he was not prescribed pain medications during his cancer treatment, but "did [not] think [it] was because [he] was already on pain medication." R.R. at 181a.

Claimant pronounced that no doctor has told him that he could return to work, even in a light-duty position, and he does not think that he could return to work

---

[12] According to Claimant, Dr. Brinser referred him to Dr. Hartman since workers' compensation was not paying him, and he was due to retire. *See* R.R. at 178a-179a, 185a.

[13] Dr. Lorenzo's full name is not in the record; however, Claimant testified that Dr. Lorenzo is affiliated with Physician's Surgical Center. *See* R.R. at 174a-175a.

9

since merely driving causes him pain. *See* R.R. at 182a. He admitted that, as he did when he was treating with Dr. Brinser, he drinks approximately six beers per day over an eight to nine-hour period. *See* R.R. at 186a-187a.

Claimant also offered into evidence Dr. Hartman's May 30, 2014 deposition transcript.[14] Dr. Hartman testified that Dr. Brinser referred Claimant to him in April 2013 for treatment of Claimant's chronic neck pain related to his 2001 work injury. Dr. Hartman recalled that his physical examination revealed that Claimant had pain with cervical motion at the right neck and shoulder girdle, and decreased neck range of motion, but a normal neurologic exam, no significant muscle weakness and equal reflexes. Dr. Hartman recalled Claimant's December 2013 MRI showed a C6-C7 cord compression, and acknowledged that was "partly the normal progression" from Claimant's prior tests. R.R. at 199a. Dr. Hartman attributed Claimant's conditions to his work injury, stating that the injury and surgery made Claimant more susceptible to progression.

Dr. Hartman diagnosed Claimant with cervical disc disease and cervical radiculopathy for which he continued Claimant's previously-prescribed narcotics and Theramine to control Claimant's pain. Dr. Hartman claimed that the prescriptions are reasonable and necessary for Claimant to function in his daily activities at home. However, Dr. Hartman acknowledged that prolonged narcotics use can create bodily dependence. He also confirmed that he was not aware that, on November 27, 2012, a WCJ deemed Claimant's ongoing narcotics use unreasonable and unnecessary. Dr. Hartman also acknowledged that he has not provided Claimant with any job restrictions, but believes Claimant would be restricted to a sedentary job with limited lifting, and no looking or lifting overhead.

_____

[14] Dr. Hartman confirmed that all of his opinions were offered within a reasonable degree of medical certainty. *See* R.R. at 202a.

Dr. Hartman recalled Claimant reporting that he is a social drinker, which Dr. Hartman elaborated was someone whose alcohol consumption is "usually occasional," R.R. at 202a, someone who "probably [doesn't] drink every day." R.R. at 203a. He admitted that because alcohol has the effect of making narcotics stronger, he would have recommended against Claimant consuming six alcoholic beverages per day while taking those drugs. *See* R.R. at 203a, 206a. Dr. Hartman also stated that Claimant signed pain management agreements on April 1, 2013 and February 4, 2014, wherein, Claimant agreed to refrain from drinking while taking opioid medications, and Claimant's daily six-beer consumption would violate those agreements. *See* R.R. at 203a-204a. Notwithstanding, Dr. Hartman maintained that Claimant's alcohol use with the narcotics does not affect Claimant's physical condition. *See* R.R. at 210a.

"The determination of whether a claimant's subjective complaints of pain are accepted is a question of fact for the WCJ." *Udvari*, 705 A.2d at 1293. Moreover, it is well established that "[t]he WCJ is the ultimate factfinder and has exclusive province over questions of credibility and evidentiary weight." *Univ. of Pa. v. Workers' Comp. Appeal Bd. (Hicks)*, 16 A.3d 1225, 1229 n.8 (Pa. Cmwlth. 2011). "The WCJ, therefore, is free to accept or reject, in whole or in part, the testimony of any witness, including medical witnesses." *Griffiths v. Workers' Comp. Appeal Bd. (Red Lobster)*, 760 A.2d 72, 76 (Pa. Cmwlth. 2000). Finally,

> Section 422(a) of the Act[15] requires a WCJ to issue a decision that permits an appellate court to exercise adequate appellate review. In order to satisfy this standard, a WCJ does not need to discuss every detail of the evidence in the record. Rather, Section 422(a) of the Act requires WCJs to issue reasoned decisions so that this Court does not have to 'imagine' the reasons why a WCJ finds that the conflicting

---

[15] 77 P.S. § 834.

11

testimony of one witness was more credible than the testimony of another witness.

Although our Supreme Court has held that a WCJ need not explain credibility determinations relating to a witness who testifies before the WCJ, Section 422(a) of the Act requires some explanation of credibility determinations by a WCJ with regard to conflicting deposition testimony in order to enable this Court to review a WCJ's decision. Under Section 422(a) of the Act, a WCJ must articulate the objective rationale underlying his credibility determinations where the testimony of such witnesses is conflicting. A WCJ may satisfy the reasoned decision requirement if he summarizes the witnesses' testimony 'and adequately explains his credibility determinations.' *Clear Channel Broad. v. Workers' Comp. Appeal Bd. (Perry),* 938 A.2d 1150, 1157 (Pa. Cmwlth. 2007). Thus, while summaries of testimony alone would be insufficient to satisfy the reasoned decision requirement, where a WCJ summarizes testimony and also objectively explains his credibility determinations, the decision will satisfy the requirement. Further, other evidence in the record may provide the objective support necessary under Section 422(a) of the Act for adequate credibility determinations.

*Amandeo v. Workers' Comp. Appeal Bd. (Conagra Foods),* 37 A.3d 72, 76 (Pa. Cmwlth. 2012) (citations omitted).

Here, based upon WCJ Puhala's November 27, 2012 decision,[16] the utilization reviewers' reports, and the testimony, the WCJ made the following findings:

23. Based on the testimony and evidence presented in this matter, this [WCJ] finds, as did [WCJ] Puhala,[17] that

---

[16] Although "[t]he [UR] report shall be part of the record before the [WCJ,]" the WCJ is not bound by it. *Marek*, 96 A.3d at 437 (quoting Section 306(f.1)(6) of the Act).

[17] Claimant contends that the WCJ's comparison to WCJ Puhala's prior decision makes clear that the WCJ did not objectively consider the evidence before him. *See* Claimant Br. at 23-24. However, at the WCJ hearing Claimant failed to object to the admission of WCJ Puhala's decision and, on appeal to the Board, objected only because it was not a final order. *See* Certified Record, Appeal Docket No. A14-0939. Because Claimant did not object before the WCJ to the admission of WCJ Puhala's decision, and then failed to assert to the Board that the WCJ erred by referencing

Claimant's current [narcotics] treatment regimen is not just unreasonable and unnecessary, but extremely dangerous.

24. Additionally, there has been no documentation of any palliative benefit from the medical food prescribed by Dr. Hartman, or the injections offered by Dr. Blakemore.

25. Dr. Peppelman testified unequivocally that Claimant has recovered from his 2001 [work] injury and surgery[,] and that his current progressive complaints are part of an underlying and non-work[-]related degenerative disc disease, which has progressed despite a six[-]year absence from work. This testimony is found to be competent, credible and persuasive. It is therefore found a[s] fact that Claimant is fully recovered from his work injury.

WCJ Dec. at 6. Accordingly, the WCJ concluded that Employer met its burden of proving that Dr. Hartman's and Dr. Blakemore's treatments subject to UR were not reasonable and necessary, and that Claimant had fully recovered from his work injury as of October 7, 2013.

Neither the Board nor the Court may reweigh the evidence or the WCJ's credibility determinations. *Sell v. Workers' Comp. Appeal Bd. (LNP Eng'g)*, 771 A.2d 1246 (Pa. 2001). In addition, "Section 422(a) [of the Act] does not permit a party to challenge or second-guess the WCJ's reasons for credibility determinations. Unless made arbitrarily or capriciously, a WCJ's credibility determinations will be upheld on appeal." *Dorsey v. Workers' Comp. Appeal Bd. (Crossing Constr. Co.)*, 893 A.2d 191, 195 (Pa. Cmwlth. 2006) (citation omitted). This Court has stated:

'[I]t is irrelevant whether the record contains evidence to support findings other than those made by the WCJ; the

WCJ Puhala's determination in his decision, the objection is waived and will not now be considered by this Court. *Mearion v. Workers' Comp. Appeal Bd. (Franklin Smelting & Ref. Co.)*, 703 A.2d 1080, 1081 n.3 (Pa. Cmwlth. 1997) ("[F]ailure to raise an issue before the Board constitutes a failure to preserve that issue for review by this Court.").

Notwithstanding, since our research uncovered no authority that would preclude the WCJ from referencing WCJ Puhala's decision as he did in Finding of Fact 23, we decline to hold that the WCJ erred by doing so.

13

critical inquiry is whether there is evidence to support the findings actually made.' [*Minicozzi v. Workers' Comp. Appeal Bd. (Indus. Metal Plating, Inc.),* 873 A.2d 25, 29 (Pa. Cmwlth. 2005)] (quoting [*Del. Cnty.*] *v. Workers' Comp. Appeal Bd. (Baxter Coles),* 808 A.2d 965, 969 (Pa. Cmwlth. 2002)). We review the entire record to determine if it contains evidence a reasonable mind might find sufficient to support the WCJ's findings. If the record contains such evidence, the findings must be upheld even though the record contains conflicting evidence.

*Lahr Mech. v. Workers' Comp. Appeal Bd. (Floyd)*, 933 A.2d 1095, 1101 (Pa. Cmwlth. 2007) (citation omitted). Moreover, this Court has held:

'Substantial evidence is such relevant evidence as a reasonable person might accept as adequate to support a conclusion.' *Waldameer Park, Inc. v. Workers' Comp. Appeal Bd. (Morrison),* 819 A.2d 164, 168 (Pa. Cmwlth. 2003). 'In performing a substantial evidence analysis, this court must view the evidence in a light most favorable to the party who prevailed before the factfinder.' *Id.* 'Moreover, we are to draw all reasonable inferences which are deducible from the evidence in support of the factfinder's decision in favor of that prevailing party.' *Id.*

*3D Trucking Co., Inc., v. Workers' Comp. Appeal Bd. (Fine & Anthony Holdings Int'l)*, 921 A.2d 1281, 1288 (Pa. Cmwlth. 2007).

Based upon its review of the record evidence and in light of the WCJ's role as factfinder, the Board held:

Dr. Peppelman's testimony, found credible by the WCJ, is substantial competent evidence establishing that Claimant's ongoing use of narcotic medications is not reasonable and necessary[,] and that he had fully recovered from his work-related injury as of Dr. Peppelman's examination on October 7, 2013. Moreover, a WCJ is permitted to rely on the detrimental effects of a medication in finding that its use is not reasonable and necessary. [*Bedford Somerset MHMR v. Workers' Comp. Appeal Bd. (]Turner[),* 51 A.3d 267 (Pa. Cmwlth. 2012)]. In the present matter, the WCJ considered the detrimental effects of narcotic medication where the

14

patient uses the narcotics in conjunction with regular alcohol consumption. We determine no error.

Board Dec. at 7.

Dr. Peppelman opined within a reasonable degree of medical certainty that Claimant's objective tests reflect the natural aging of Claimant's spine, rather than ongoing symptoms related to Claimant's May 2001 work injury and related 2005 surgery. In reaching that conclusion, Dr. Peppelman considered Claimant's medical history and records, Claimant's nearly identical 2011 and 2013 IMEs, and Claimant's "inappropriate illness behavior" and representations that his pain is caused by every activity and movement, and that none of the prescribed treatments over the previous 10 years – including steroid and prolotherapy injections, nutritional supplements and even narcotics use coupled with alcohol – have afforded him relief. R.R. at 130a. More specifically, Dr. Peppelman credibly explained that the mild C6-C7 level cord compression and the bone spurs evident in Claimant's December 18, 2013 cervical MRI could be a cause for Claimant's complaints, the results of Claimant's October 7, 2013 examination did not support such a conclusion.

Although Dr. Hartman related all of Claimant's objective test results and chronic pain complaints to Claimant's 2001 work injury within a reasonable degree of medical certainty, Dr. Hartman admitted that he reached that conclusion based upon Claimant's representations. He also acknowledged that Claimant's MRI and EMG reflect some normal degenerative changes despite that Claimant has been off work. *See* R.R. at 199a. The WCJ found Dr. Peppelman's unequivocal testimony more credible than Dr. Hartman's, and resolved conflicts in their medical testimony in Employer's favor. After a thorough review of the record, we hold that the Board

15

did not err by upholding the WCJ's conclusion that Claimant was fully recovered from his work-related injuries as of October 7, 2013.[18]

Dr. Peppelman's credible testimony regarding the lack of medical support for prolotherapy's long-term use, and Claimant's report to him that they "really haven't helped," support the WCJ's findings that any prolotherapy treatments Claimant received from Dr. Blakemore after August 6, 2012 were not reasonable and necessary. R.R. at 127a. Similarly, Dr. Peppelman's conclusion that Claimant reached maximum medical improvement in May 2011, and the epidural steroid injections never afforded Claimant any long-term palliative relief constitute substantial evidence to support the WCJ's conclusion that Dr. Hartman's referrals for such treatments after April 23, 2013 were not reasonable and necessary. In addition, Dr. Peppelman's opinion regarding Theramine's questionable therapeutic benefit, together with its failure to afford Claimant significant pain relief, support the WCJ's findings that Dr. Hartman's use of Theramine to treat Claimant after April 23, 2013 was not reasonable and necessary.

Finally, concerning the reasonableness and necessity of Dr. Hartman's narcotics prescriptions for Claimant, Dr. Hartman agreed with Dr. Peppelman's credible testimony that long-term use of narcotic medications creates bodily dependence which reduces their benefit and thus progressively more medication is

---

[18] Claimant avers that the WCJ failed to articulate an objective basis for deeming Dr. Peppelman more credible than Dr. Hartman, as required by Section 422(a) of the Act. *See* Claimant Br. at 14-15, 25. Although we agree that the WCJ was not as articulate as he could have been regarding why he deemed Dr. Peppelman's testimony more credible than Dr. Hartman's testimony, "a decision is 'reasoned' for purposes of Section 422(a) [of the Act] if it allows for adequate review by the [Board] without further elucidation and if it allows for adequate review by the appellate courts under applicable review standards." *Daniels v. Workers' Comp. Appeal Bd. (Tristate Transp.)*, 828 A.2d 1043, 1052 (Pa. 2003). Since it is sufficiently clear in this record why the WCJ found Dr. Peppelman's testimony more credible than Dr. Hartman's testimony, we decline to hold that the WCJ violated Section 422(a) of the Act.

16

required to achieve the initial results, but also that alcohol aggravates the bodily dependence, and that alcohol consumption with narcotics is dangerous and contraindicated. Moreover, the record is clear that Dr. Hartman was not fully informed when he concluded that Claimant's continued use of OxyContin and Oxycodone was reasonable and necessary. Specifically, despite his having treated Claimant since April 2013, and Claimant's execution of a pain management agreement, Dr. Hartman did not know that Claimant consumed approximately six beers daily over an eight to nine-hour period since as far back as his May 2011 IME. Dr. Hartman was also unaware that Dr. Brinser's prescriptions of the identical narcotics for Claimant had long before been declared not reasonable and necessary. Thus, we hold that Dr. Peppelman's credible testimony is substantial evidence to support the WCJ's finding that the narcotics Dr. Hartman prescribed for Claimant since April 23, 2013 are "not just unreasonable and necessary, but extremely dangerous." WCJ Dec. at 5.

Claimant contends that the WCJ's reliance on Claimant's alcohol consumption was inappropriate, and his determination that Claimant's mixing of the narcotics and alcohol is "extremely dangerous" is unfounded. Claimant Br. at 24. However, this Court has expressly held:

> [I]n determining the reasonableness and necessity of a prescribed medication, it is entirely appropriate for a [utilization] reviewer to consider the risk to the patient. In [] other words, a [utilization] reviewer **may consider whether it is reasonable and necessary for a provider to expose a patient to the level of risk presented by a medication**.

*Turner*, 51 A.3d at 272-73 (citation omitted; emphasis added). Therefore, there is no merit to Claimant's argument that the WCJ improperly considered his alcohol consumption when evaluating the reasonableness and necessity of his continued use of narcotics.

17

Viewing the evidence in a light most favorable to Employer, as we must, and drawing all reasonable inferences which are deducible from the evidence the WCJ deemed credible, we hold that there was substantial evidence to support the WCJ's conclusion that Claimant recovered from his work-related injury as of October 7, 2013, and that Dr. Blakemore's prolotherapy treatments since April 17, 2012 and Dr. Hartman's narcotics prescriptions, Theramine treatment and steroid injection referrals since April 23, 2013 were not reasonable and necessary. Thus, the Board properly affirmed the WCJ's decision.

Based upon the foregoing, the Board's order is affirmed.

_____
ANNE E. COVEY, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Robert Rothgaber,                                    :
                          Petitioner                 :
                                                     :
              v.                                     :
                                                     :
Workers' Compensation Appeal                         :
Board (Weaber, Inc.),                                :       No. 1552 C.D. 2015
                          Respondent                 :

## O R D E R

AND NOW, this 6th day of July, 2016, the Workers' Compensation Appeal Board's July 28, 2015 order is affirmed.

_____
ANNE E. COVEY, Judge