Susan GARY, Petitioner

v.

WORKERS' COMPENSATION AP-
PEAL BOARD (PHILADELPHIA
SCHOOL DISTRICT), Respondent.

Commonwealth Court of Pennsylvania.

Submitted on Briefs Nov. 5, 2010.

Decided April 21, 2011.

Patrick M. Donan, Philadelphia, for petitioner.

Erin C. Thompson, Paoli, for respondent Philadelphia School District.

BEFORE: COHN JUBELIRER, Judge, and LEAVITT, Judge, and BUTLER, Judge.

OPINION BY Judge COHN JUBELIRER.

Susan Gary (Claimant) petitions for review of the order of the Workers' Compensation Appeal Board (Board) affirming the order of the Workers' Compensation Judge (WCJ), which denied Claimant's Utilization Review (UR) Petition. The Board determined that continued treatment by Claimant's chiropractor was no longer reasonable or necessary as of December 31, 2007. On appeal, Claimant argues that the Board erred in affirming the WCJ's denial because: (1) the WCJ made no reference to a previous 2003 UR decision which found the same treatment of Claimant by the same chiropractor to be reasonable and necessary; (2) Philadelphia School District (Employer) failed to uphold its burden of showing either a change in Claimant's condition or a change in the treatment since the 2003 UR decision; (3)

the UR Determination by the UR physician was inaccurate; and (4) Claimant submitted unequivocal medical evidence to support her continued need for chiropractic therapy.

On March 7, 2001, Claimant suffered a work-related injury to her neck and back while employed with the Employer. Employer accepted this injury through a Notice of Compensation Payable recognizing a cervical and lumbar strain injury. WCJ Devlin issued an order on November 19, 2003, granting a UR (2003 UR Decision) and ordering Employer to pay for Claimant's chiropractic treatment with Robert Ackert, D.C., on and after June 11, 2002. Subsequently, WCJ Olin issued a decision on May 23, 2007, dismissing Employer's termination petition and expanding Claimant's accepted work injuries to also include cervical and lumbar radiculopathy. On January 28, 2008, Employer filed a UR Request asking the Bureau of Workers' Compensation (Bureau) to review the reasonableness and necessity of the chiropractic treatment provided to Claimant by Dr. Ackert beginning December 31, 2007. The Bureau assigned the UR to Laurel Reviews as the Utilization Review Organization (URO). Gregg J. Fisher, D.C., performed the UR on behalf of the URO.

In the UR Determination, Dr. Fisher noted that he reviewed Dr. Ackert's records, Claimant's signed statement, and numerous diagnostic studies and records from Claimant's treating physician, Sofia Lam, M.D. Dr. Fisher noted that Claimant saw Dr. Ackert on December 2, 2005, who, at that time, diagnosed Claimant with cervical radiculitis/neuritis, cervical sprain/strain, lumbar sprain/strain, cervical/thoracic/lumbar segmental dysfunction, and cervical/thoracic/lumbar myofascial pain syndrome. Dr. Fisher noted that Claimant went to Dr. Ackert's office 190 times from December 2, 2005 to December 28, 2007, and Dr. Ackert performed a total of 25 examinations. Dr. Ackert told Dr. Fisher that Claimant's condition is chronic. Dr. Fisher found the current treatment by Dr. Ackert constituted an ongoing therapeutic phase of treatment but, because there has been no significant or ongoing improvement in Claimant's symptoms, he found the ongoing treatment unreasonable and unnecessary.

Claimant filed a UR Petition on March 31, 2008, challenging the UR Determination's conclusion that all treatment by Dr. Ackert since December 31, 2007 was unreasonable and unnecessary. The matter was assigned to the WCJ. In support of her UR Petition, Claimant testified and submitted the following documents: (1) a report from Dr. Ackert stating that he believes his treatment of Claimant is reasonable and necessary; (2) a report from Dr. Lam stating she believes that, in addition to her treatment of Claimant, Claimant also needs chiropractic care one to two times per week from Dr. Ackert; and (3) a personal statement by Claimant noting that Dr. Ackert's treatment alleviates some of her pain.

The WCJ found the medical records submitted by Claimant neither credible nor persuasive because Claimant's condition has not shown improvement in any way despite several years of chiropractic treatment. The WCJ did not find Claimant's testimony persuasive or convincing because Claimant did not submit substantial, unequivocal medical evidence to support the continued need of chiropractic therapy. However, the WCJ found the UR Determination convincing and persuasive because, after reviewing records pertaining to Claimant's overall treatment, it noted that Claimant has shown no significant improvement over time and Dr. Ackert's findings have not changed significantly over time. The WCJ found the treatment by Dr. Ackert unreasonable and unnecessary because it is not helping

Claimant to improve. As such, the WCJ denied and dismissed the UR Petition. Claimant appealed the WCJ's order to the Board, which affirmed. Claimant now appeals to this Court.[1]

On appeal, Claimant argues that the WCJ erred in denying the UR Petition and that the decision is not supported by substantial evidence. In making this argument, Claimant points to several alleged errors. Because Claimant's first two arguments are related, we discuss them together. Claimant asserts that the WCJ failed to address the 2003 UR Decision that ordered Employer to pay for Claimant's chiropractic treatment with Dr. Ackert on and after June 11, 2002. Claimant contends that the 2003 UR Decision "establishes the starting point for [Employer]'s burden of proof," (Claimant's Br. at 10), and failure to reference the 2003 UR Decision was legal error. Claimant contends that "Employer's defense that the treatment was not improving Claimant was rejected as not credible by [the 2003 UR Decision] and the Employer cannot relitigate what it already lost previously." (Claimant's Br. at 10–11.) Relying on *C.D.G., Inc. v. Workers' Compensation Appeal Board (McAllister)*, 702 A.2d 873 (Pa. Cmwlth.1997), Claimant asks us to vacate and remand this case to the WCJ to consider the 2003 UR Decision in order to decide if Employer upheld its burden of proving either a change in condition or a change in treatment since the 2003 UR Decision.

■ Employer argues that "there is evidence of record that proves [Claimant]'s condition has changed over the years since the first UR in 2002. In fact, the evidence seems to suggest [Claimant] is getting worse." (Employer's Br. at 6.) Employer asserts that Claimant has been receiving chiropractic treatment for eight years and her condition is declining. "When treatment does not help and actually appears to be hurting, it should not be allowed." (Employer's Br. at 7.)

In *C.D.G.*, the employer challenged a decision of the Board that denied its UR petition and directed the employer to pay certain medical bills associated with the physical therapy that the claimant was receiving from her doctor for the claimant's work-related injury. The employer initially had filed a petition to review medical treatment, alleging that the claimant had reached the maximum benefits from those treatments and that any therapy provided after November 3, 1992 was unreasonable and unnecessary. This petition to review medical treatment was assigned to a WCJ (first WCJ). While that petition was pending before the first WCJ, our General Assembly enacted an amendment to the Pennsylvania Workers' Compensation Act (Act),[2] known commonly as "Act 44."[3]

---

1. This Court's "scope of review in a workers' compensation appeal is limited to determining whether an error of law was committed, constitutional rights were violated, or whether necessary findings of fact are supported by substantial evidence." *Bloom v. Workmen's Compensation Appeal Board (Keystone Pretzel Bakery)*, 677 A.2d 1314, 1317 n. 4 (Pa. Cmwlth.1996). Further, the party who prevailed before the WCJ, Employer in this matter, is entitled to the benefit of the most favorable inferences to be drawn from the evidence in the record. *Fulton v. Workers' Compensation Appeal Board (School District of Philadelphia)*, 707 A.2d 579, 582 (Pa.Cmwlth.1998).

The appellate role in a workers' compensation case is not to reweigh the evidence or review the credibility of the witnesses; rather, the Board and the appellate court must simply determine whether the WCJ's findings have the requisite measure of support in the record as a whole. *Bethenergy Mines, Inc. v. Workmen's Compensation Appeal Board (Skirpan)*, 531 Pa. 287, 293, 612 A.2d 434, 437 (1992).

2. Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1—1041.4; 2501—2708.

3. The Act of July 2, 1993, P.L. 190.

This amendment created the UR process at issue in this case. The employer then filed a UR request asserting, similarly, that the claimant's medical treatment by her doctor was not reasonable or necessary for the period after August 31, 1993. The reviewer determined that the treatment was not necessary and the claimant sought review of the UR determination, which was assigned to another WCJ (second WCJ). Before the second WCJ acted on the same, the first WCJ conducted hearings relating to the employer's petition to review medical treatment and rendered a decision concluding that the treatments were unreasonable and unnecessary as of November 2, 1992. The employer then argued before the second WCJ that the decision of the first WCJ constituted a final adjudication on the merits of the reasonableness of the treatments by the claimant's doctor and, hence, the claimant's UR petition was precluded on collateral estoppel grounds.[4] The second WCJ, however, rejected that argument and reviewed the parties' experts' reports, ultimately concluding that the treatment by the claimant's doctor was reasonable and necessary. The employer appealed to the Board, which concluded that collateral estoppel did not apply. The Board affirmed the decision and order of the second WCJ.

On appeal to this Court, we reversed the Board. This Court considered whether the difference in the dates and frequency of treatment were sufficient distinctions to represent different issues and preclude the application of collateral estoppel. Ultimately, we concluded that the Board erred in permitting the claimant to re-litigate whether the same treatment was necessary without showing a change in condition. We found that the UR provisions under the Act did not "change the general rule that there has to be a change in claimant's physical condition from the last proceeding for collateral estoppel not to apply." *Id.* at 877 (emphasis added). Moreover, we indicated that said provisions did not "vitiate the application of the doctrine of collateral estoppel to allow a *constant stream of utilization requests* where the treatment and claimant's condition remain the same even though time has past." *Id.* (emphasis added.)

■ Claimant correctly notes that the WCJ did not discuss the 2003 UR Decision,[5] although it was a part of the record; however, we do not believe that the lack of discussion or the lack of a specific finding that a change of condition or treatment had occurred since the 2003 UR Decision is grounds to conclude that the WCJ erred as a matter of law. *C.D.G.* is a case with

---

4. In *C.D.G.*, we noted that:

[c]ollateral estoppel or "issue preclusion" is "designed to prevent relitigation of issues which have once been decided and have remained substantially static, factually and legally." It forecloses relitigation in a later action of an issue of fact or law which was actually litigated and which was necessary to the original judgment. For collateral estoppel to apply, it must be shown that (1) the issue decided in the prior case is identical to the one presented in the later case; (2) there was a final judgment on the merits; (3) the party against whom the doctrine is asserted was a party or in privity with a party in the prior case and had a full and fair opportunity to litigate the issue and;

(4) the determination in the prior proceeding was essential to the final judgment. *Id.,* 702 A.2d at 875 (citations omitted) (footnote omitted).

5. We note that the WCJ did reference *WCJ Olin's* decision from 2007, which dismissed Employer's termination petition and granted, in part, Claimant's Petition to Review Compensation Benefits. (*See* WCJ Decision at 1 ("Workers' Compensation Judge Olin then issued a Decision and Order granting a prior Review Petition and expanding the accepted work injuries to include cervical and lumbar radiculopathy.")) However, there is no reference in the WCJ's decision to *WCJ Devlin's* 2003 UR Decision.

unique facts and is distinguishable from the case at bar. We note that, unlike the situation here where *two UR petitions were filed,* C.D.G. involved two *different* petitions—a petition to review medical treatment and a UR petition. The first WCJ determination was that the physical therapy claimant was receiving was not reasonable or necessary *after November 1992* because the claimant "had reached maximum benefit from his therapy," *C.D.G.,* 702 A.2d at 877; the same therapy could not be found to be reasonable and necessary without any new facts about the claimant's condition, only 9 months later (*after August 31, 1993*). Thus, because the claimant had reached maximum benefit from the physical therapy he was receiving, in order to avoid collateral estoppel, it was necessary for the claimant to present new facts of a change in his condition or a change in the increase of his pain. *Id.* In contrast, the first UR petition requested in this case sought review of the reasonableness and necessity of the medical treatment *after June 11, 2002,* and the second UR petition sought review of the reasonableness and necessity of the medical treatment *after December 31, 2007,* which

is a difference of *five years and six months.* Moreover, in this case, there was credible evidence in the record showing a change in Claimant's condition. For example, as Employer points out in its brief, Dr. Fisher, in his UR Determination, examined EMG studies from 2001 to 2006 which show a change in Claimant's condition since the 2003 UR Decision.[6] Thus, this case is distinguishable from *C.D.G.* The substantial difference in the length of time between UR requests satisfies this Court's concern that UR "does not vitiate the application of the doctrine of collateral estoppel to allow a constant stream of utilization requests where the treatment and claimant's condition remain the same even though time has pas[sed]" while an employer hopes that a WCJ will finally find in its favor. *C.D.G.,* 702 A.2d at 876–77 (citing *Banks v. Workmen's Compensation Appeal Board,* 15 Pa.Cmwlth. 373, 327 A.2d 404, 406 (1974)).[7] Thus, we agree with the Board that the WCJ did not err.

■ Next, Claimant argues that Dr. Fisher's UR Determination is not competent evidence to support Employer's burden of proof because it inaccurately stated that Claimant had treated with Dr. Ackert

---

6. The UR Determination provides, in relevant part:
Diagnostic study results provided for review include:
. . .
• An EMG/NCV study performed on 11/02/01 revealed proximal nerve lesion C6 and C7.
• An EMG/NCV study performed on 10/17/02 revealed right and left carpal tunnel syndrome and no evidence of cervical or lumbar radiculopathy.
• An EMG/NCV study performed on 01/18/06 revealed an L5 and probable S1 radiculopathy and chronic right C6–7 cervical radiculopathy.
(UR Determination at 3, R.R. at 7a.) The WCJ credited Dr. Fisher's testimony and affirmed Dr. Fisher's UR Determination, which was based, at least in part, on his review of these diagnostic studies.

7. We note that a UR petition is different from a termination petition because, unlike a termination petition that is predicated on a change in Claimant's physical condition, a UR petition is predicated on the reasonableness and necessity of certain medical treatment. As such, in a UR proceeding, the passage of time may affect the reasonableness and necessity of a particular medical treatment, even if the claimant's medical condition has not changed. For example, surgery may not be a reasonable and necessary form of treatment for a claimant soon after a claimant is injured, but may become reasonable and necessary later if other less invasive forms of treatment have not been beneficial. Similarly, it is possible that a treatment may be initially reasonable but, if it does not prove to be beneficial over time, a different treatment may become more appropriate.

since December 2, 2005, when, in fact, the treatment began in 2001. The WCJ accepted the opinion of Dr. Fisher in the UR Determination as persuasive and convincing because Dr. Fisher reviewed "the records pertaining to the [C]laimant's overall treatment and noted that the Claimant has shown no significant improvement over time and the provider's findings have not changed significantly over time." (WCJ Decision, Finding of Fact (FOF) ¶ 8.) Although Claimant is correct that the UR Determination only noted treatment given by Dr. Ackert to Claimant beginning December 2, 2005, when, in fact, Dr. Ackert began treating Claimant in 2001, this mistake of failing to consider medical records before December 2, 2005, goes to the weight of Dr. Fisher's opinion rather than the competency of his opinion. *Huddy v. Workers' Compensation Appeal Board (U.S. Air)*, 905 A.2d 589, 593 n. 9 (Pa. Cmwlth.2006). In workers' compensation cases, the WCJ is the exclusive fact finder and arbiter of the credibility of witnesses and weight of the evidence, including the weight that should be afforded to UR determinations. *Sweigart v. Workers' Compensation Appeal Board (Burnham Corp.)*, 920 A.2d 962, 966 (Pa.Cmwlth. 2007). We agree with the Board that "[i]nasmuch as Dr. Fisher's failure to address previous treatment was only relevant as to the weight of the opinions expressed and the WCJ specifically credited those opinions ... no error occurred." (Board Op. at 5.)

Finally, Claimant argues that the WCJ erred in denying her UR Petition because she did not need to show improvement in her condition, rather, all she was required to show was unequivocal medical evidence supporting her continued need for chiropractic therapy, which she presented. In all stages of a UR proceeding, the employer, seeking to avoid the payment of medical services, carries the burden of proof in demonstrating that the treatment in question is unnecessary or unreasonable. *Cruz v. Workers' Compensation Appeal Board (Philadelphia Club)*, 728 A.2d 413, 417 (Pa.Cmwlth.1999). Treatment may still be reasonable and necessary "even when it is designed to manage the claimant's symptoms rather than to cure or permanently improve the underlying condition." *Jackson v. Workers' Compensation Appeal Board (Boeing)*, 825 A.2d 766, 771 (Pa.Cmwlth.2003). However, the credited evidence must establish the need for the palliative treatment in order for the WCJ to determine that it is reasonable and necessary. *See id.* at 772. In meeting its burden, the employer's medical evidence must address the specific treatment currently under review. *Brookside Family Practice v. Workers' Compensation Appeal Board (Heacock)*, 897 A.2d 539, 541–42 (Pa. Cmwlth.2006).

Here, although the treatment Claimant received from Dr. Ackert was intended to be palliative in nature, we cannot conclude that the treatment was reasonable and necessary as a matter of law because the WCJ specifically discredited the testimony from Claimant and her doctors that Claimant needed this treatment. *Jackson*, 825 A.2d at 772; (FOF ¶¶ 6–7.) The WCJ accepted Dr. Fisher's opinion as convincing and persuasive because he reviewed "the records pertaining to the [C]laimant's overall treatment and noted that the Claimant has shown no significant improvement over time and the provider's findings have not changed significantly over time." (FOF ¶ 8.) Dr. Fisher noted that Claimant had approximately 190 treatments from Dr. Ackert from December 2, 2005 through December 28, 2007, which included "therapeutic exercise, electrical stimulation, ultrasound, spinal manipulation, trigger point therapy, neuromuscular reeducation, mechanical traction, hot packs, manual therapy/myofascial release, massage and dynamic activities."

(UR Determination at 3, R.R. at 7a.) Dr. Fisher notes that the progress reports during this time period "are on a pre-printed form and do not contain objective findings, assessments, treatment frequency, or functional limitations." (UR Determination at 3, R.R. at 7a.) Dr. Fisher further explained his review of the treatment at issue for the time period of December 21, 2007, and ongoing:

> The treatment dates for the time frame under review (12/31/07 and ongoing) include 12/31/07, 01/04/08, 01/07/08, 01/11/08, 01/14/08, 01/18/08, 01/21/08, 01/25/08, 01/28/08, 02/01/08, 02/04/08, 02/08/08, 02/11/08, and 02/15/08. The treatment performed during the time frame under review included therapeutic exercises, manual therapy, hot packs, electrical stimulation, trigger point therapy, neuromuscular reeducation, mechanical traction, dynamic activities, hydrotherapy, massage, manipulation, and ultrasound. Examinations, muscle testing and range of motion studies were performed on 01/07/08 and 02/08/08. The ongoing treatment plan is not stated in the most recent progress notes.

(UR Determination at 3–4, R.R. at 7a–8a.) Dr. Fisher explained that the medical records under review indicated that Claimant was receiving ongoing therapeutic treatment. As such, Dr. Fisher recognized that this treatment was palliative in nature and not designed to cure Claimant's medical condition. Dr. Fisher opined that, for the treatment under review:

> the chiropractic progress notes and examinations clearly do not show an ongoing and significant change in subjective complaints, objective examination findings, and functional status. In fact, the objective findings contained on the examinations, self-reported subjective pain rating, etc., do not show a significant improvement during the entire course of treatment.

(UR Determination at 5, R.R. at 9a.) In other words, Dr. Fisher recognized that the treatment under review was supposed to be palliative in nature, but determined that despite years of the same treatment Claimant was not getting any benefit from it. As such, Dr. Fisher concluded that Claimant's treatment from December 2007 and ongoing was not reasonable and necessary. Although Claimant testified that the treatment by Dr. Ackert provided her "some relief" (Hr'g Tr. at 8, R.R. at 37a), the WCJ rejected her testimony as neither credible nor persuasive. (FOF ¶ 7.) Therefore, based on the credited evidence of record, we conclude that the WCJ's decision was supported by substantial, competent evidence.

Accordingly, we affirm the order of the Board.

### ORDER

**NOW,** April 21, 2011, the order of the Workers' Compensation Appeal Board in the above-captioned matter is hereby **AFFIRMED.**