# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Daniel Fanning,                 :
              Petitioner    :
                     :
            v.           : No. 992 C.D. 2018
                     : Submitted: April 9, 2019
Workers' Compensation Appeal   :
Board (Lower Merion School District  :
and John Carr Electric and School  :
District Insurance Consortium and  :
Harleysville Insurance Company),   :
              Respondents  :

BEFORE:     HONORABLE RENÉE COHN JUBELIRER, Judge
              HONORABLE ANNE COVEY, Judge (P.)
              HONORABLE MICHAEL H. WOJCIK, Judge

<u>OPINION NOT REPORTED</u>

MEMORANDUM OPINION BY
JUDGE COHN JUBELIRER            FILED: May 2, 2019

       Daniel Fanning (Claimant) petitions for review of the Order of the Workers' Compensation Appeal Board (Board) that affirmed the decision of Workers' Compensation Judge (WCJ) Makin (WCJ Makin) denying and dismissing Claimant's Petition to Review the Utilization Review (UR) Determination (UR Petition) and Petition for Penalties (Penalty Petition). WCJ Makin concluded, on the UR Petition, that the doctrines of res judicata and collateral estoppel did not preclude Brian Cicuto, D.O., the UR physician, from finding the challenged medical treatment not medically reasonable and necessary. On the Penalty Petition, WCJ Makin held that Claimant did not meet his burden of proving a

violation of the Workers' Compensation Act[1] (Act). On appeal, Claimant argues the current UR Determination is barred by res judicata or collateral estoppel because the medical treatment currently being challenged was previously challenged and found, by two other WCJs (WCJ Burman and WCJ Callahan) and by Dr. Cicuto in a 2015 UR Determination, to be reasonable and necessary and, there being no change in Claimant's condition, those decisions are binding. He further asserts that WCJ Makin erred in excluding the 2015 UR Determination from evidence. Claimant also argues that it was a violation of the Act for Lower Merion School District and its insurer, School District Insurance Consortium (together, District), and John Carr Electric and its insurer, Harleysville Insurance Company (together, John Carr), to seek a new UR for treatment already found to be reasonable and necessary. Upon review, we are constrained to affirm.

## I. Background

### A. *Facts and Procedure*

Claimant injured his back while working for John Carr as an electrician on October 7, 1987. He again injured his back while working for District on March 15, 2001. By an earlier WCJ decision, Claimant's injuries were determined to be indivisible and both John Carr and District were equally responsible for those injuries. On December 18, 2015, District filed a UR Request, seeking review of the treatment given to Claimant by Don Koenigsberg, D.O., "including but not limited to, office visits, injections, and medications provided to Claimant from October 14, 2015 and ongoing." (WCJ Makin Decision, Finding of Fact (FOF) ¶ 2.) Dr. Cicuto issued the current UR Determination on February 19, 2016, finding,

---

[1] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1 - 1041.4, 2501-2710.

relevant here, that the "continued prescriptions for OxyContin 40 mg every 12 hours, Oxycodone 30 mg[] [4] times a day and Oxycodone 15 mg[] [3] times a day and Valium 10 mg[] daily were not reasonable or necessary from October 14, 2015 and ongoing." (*Id.* ¶ 3.) Claimant filed the UR Petition challenging Dr. Cicuto's determination and the Penalty Petition alleging that District violated the Act by filing the UR request "despite the fact that the treatment it requested to be reviewed . . . was already determined to be reasonable and necessary . . . ." (*Id.* ¶ 5.)

WCJ Makin held various hearings, at which District and Claimant presented documentary evidence, and John Carr participated. District presented Dr. Cicuto's current UR Determination and some of Dr. Koenigsberg's records. Claimant offered additional records from Dr. Koenigsberg, and, in support of his assertion that res judicata or collateral estoppel applied, the October 21, 2011 decision of WCJ Burman, and the August 28, 2014 decision of WCJ Callahan. At the last hearing on July 25, 2016, after which the record would be closed, Claimant sought to introduce documents related to the 2015 UR Determination. Claimant presented a UR request filed by District on February 11, 2015, which sought review of the treatment Dr. Koenigsberg provided Claimant on December 29, 2014, and the 2015 UR Determination of Dr. Cicuto, mailed on April 17, 2015, finding that one day of treatment reasonable and necessary. (Reproduced Record (R.R.) at 46-47, 50.) John Carr objected, asserting these materials were not relevant because they "concern[ed] treatment as of a certain date" and "[t]he only thing that's relevant to these proceedings is the treatment that was under review" in the current UR Determination. (*Id.* at 47.) While noting that Dr. Cicuto issued both determinations, John Carr stated "the period of time is different." (*Id.*) Claimant

3

responded that he was introducing the 2015 UR Determination because he believed "the historical basis for this is very important for [WCJ Makin's] understanding as to what's been going on in this litigation." (*Id.* at 49.) Claimant also argued that, in order to file a new UR request for the same treatment, District or John Carr had to show "that there's a change in circumstances concerning his condition." (*Id.* at 48.) WCJ Makin sustained the objection and excluded the 2015 UR Determination because she did not "believe that, just because [the treatment] was reasonable and necessary in the past, it continues to be reasonable and necessary as of the date of the current UR . . . ." (*Id.* at 49.) She directed Claimant to upload the 2015 UR Determination as an exhibit, but it was not admitted. (*Id.* at 50.) WCJ Makin admitted the decisions of WCJs Burman and Callahan. (*Id.* at 49.)

Following the close of the record, WCJ Makin reopened the record to allow "for the appointment of an impartial pain management physician to review the record and perform an examination of Claimant." (FOF ¶ 9.) The parties agreed on an examination by Gregory H. Pharo, D.O., who would provide an opinion on the challenged treatment's reasonableness and necessity. After Dr. Pharo's appointment, but before he issued his report, Claimant again attempted to submit the 2015 UR Determination. (*Id.* ¶ 10.) John Carr and District objected to the opening of the record for evidence from the parties, and WCJ Makin sustained the objection. WCJ Makin observed that Claimant "preserved [his] objection relying on *C.D.G., I[nc. v. Workers' Compensation Appeal Board] (Mc[A]llister)*, 702[]A.2d 873[](Pa. Cmwlth. 1997)." (*Id.*) WCJ Makin found *C.D.G.*, which applied collateral estoppel to a UR proceeding, inapplicable because "it does not explain Claimant's counsel's failure to offer the exhibit during the trial of this matter when proper rebuttal could have been submitted by opposing counsel."

4

(*Id.*)  WCJ Makin stated, further, that "[t]his does not meet the criteria for after[-] discovered evidence that was not available to Claimant's counsel prior to the close of the record."  (*Id.*)

### B.     WCJ Makin's Decision

In the Decision, WCJ Makin summarized the evidence as follows.  Dr. Cicuto[2] was assigned to review the reasonableness and necessity of Dr. Koenigsberg's treatment of Claimant, including medications, from October 14, 2015, and ongoing.  Dr. Cicuto recited a history of Claimant's two work injuries, noting that Claimant began treating with Dr. Koenigsberg on March 13, 2010, at which time Claimant complained of a pain level of 10 out of 10.  Dr. Cicuto reviewed various records from Dr. Koenigsberg but did not request a telephone discussion with Dr. Koenigsberg.  Dr. Cicuto noted that between March 13, 2010, and September 3, 2015, Claimant had seen Dr. Koenigsberg 23 times.  Claimant's medications changed in amount and type throughout the course of Dr. Koenigsberg's treatment.  Claimant's prescriptions as of a November 9, 2015 appointment, at which Claimant rated his pain at 7 or 8 out of 10, were for a 3-month supply of "Mobic 7.5 mg[] twice daily; Valium 10 mg[] daily; Cymbalta 30 mg[] twice daily; Oxycodone 30 mg[] four times a day; OxyContin 40 mg[] every twelve hours; and [O]xycodone 15 mg[] three times a day as needed."[3]  (*Id.* ¶ 14.)

---

[2] The summary of Dr. Cicuto's UR Determination is found in FOF ¶¶ 11-15.  Dr. Cicuto's report is found at pages 3-9 in the Reproduced Record.

[3] Per Dr. Cicuto's UR Determination, Claimant's medications previously had been:

> OxyContin 80 mg[] one three times a day, Dilaudid 4 mg[] three times a day, Valium 10 mg[] one daily, Roxicodone 30 mg[] three times a day, a flector patch topically twice a day, Flexeril 10 mg[] twice a day, Prilosec 10 mg[] one daily, and Mobic 7.5 mg[] twice a day.  OxyContin 80 mg[] was changed to twice a day and an additional Oxycodone 30 mg[] was added per day.  Dilaudid was later

**(Footnote continued on next page…)**

Dr. Cicuto's review of Dr. Koenigsberg's records revealed that in 2012, a message was left revealing "that Claimant's opioid medication was 'lost or missing.'" (*Id.* ¶ 12.) In 2013, an office notice reflected that Claimant's medication package "was sliced open and the 'meds were taken out (stolen),'" requiring the replacement of his medications, including the narcotics. (*Id.*)

After reviewing the medications prescribed during the review period, their side effects, and their purposes, Dr. Cicuto concluded the Mobic and Cymbalta prescribed, as well as the office visits with Dr. Koenigsberg every three months, were reasonable and necessary. The continued prescription of the opioid medications and Valium, Dr. Cicuto opined, was not reasonable or necessary. According to Dr. Cicuto, "OxyContin is considered a last resort treatment for chronic non cancer pain"; "[d]osages should reflect a significan[t] change in the use of opioids which includes using the lowest dose possible"; requires "documenting an improvement in function with the medication"; and requires "adequate follow up visits, random urine drug screens to monitor compliance with the use of the medication[,] and pill counts." (*Id.* ¶ 15.) Dr. Cicuto noted that there was no evidence in the records that random screens of Claimant were performed or that pill counts were used, even though there were two instances when Claimant's medications were lost or stolen. As for the Valium, Dr. Cicuto observed this medication is now indicated for the treatment of anxiety and seizure, not as a muscle relaxer or for pain-related sleep disturbance, as is being used here.

---

**(continued…)**

    changed to twice a day and the Oxycodone 30 mg[] increased to five a day. OxyContin 80 mg[] was converted to Opana ER, 40 mg[] twice a day then increased to three times per day.

(FOF ¶ 11.)

Dr. Pharo[4] examined Claimant in December 2016, taking a history from Claimant of his work injuries and treatment for those injuries, as well as his daily living activities. Claimant lives with his wife and grandchild, of whom he has custody, and can perform activities of daily living, lift up to 15 pounds, and, for 30 minutes each, walk, drive, and grocery shop. Claimant's narcotic medication and Valium dosages as of the December 2016 examination were the same as those listed as current by Dr. Cicuto's current UR Determination.[5] Claimant recounted once losing some of his Oxycodone while fishing with his grandchild and once having to replace his Valium when it fell onto the bathroom floor. Claimant does not receive physical therapy or chiropractic treatment, use a TENS unit, exercise, or perform stretching exercises.

At Dr. Pharo's examination, Claimant complained of pain at a level of 7 out of 10, which can be decreased by lying down and taking medications. Claimant used a walking stick and wore a lumbar support brace. Noting that the work injury and diagnosis were not in dispute, Dr. Pharo opined that the visits every three months and the prescriptions for Cymbalta and Meloxicam (another name for Mobic) were reasonable and necessary. Dr. Pharo explained that "[a]lthough Dr. Koenigsberg has slowly weaned Claimant from higher doses of opioids where he initially started, [Claimant] remains on extremely high doses of opioid medications," including Oxycodone, the current prescription of which is three times the highest dose recommended by the American Medical Association. (*Id.* ¶

---

[4] The summary of Dr. Pharo's report is found in FOF ¶¶ 16-17. There are two paragraph 17s in WCJ Makin's Decision, both refer to Dr. Pharo's report. Dr. Pharo's report is found at pages 87-90 of the Reproduced Record.

[5] It appears that Claimant's use of Mobic went from twice daily to once daily between the current UR Determination and Dr. Pharo's report. (R.R. at 88-89.)

7

17.) Finally, "Dr. Pharo opined that Claimant should be weaned from the current morphine equivalent doses of 360 to 100 per day," which should be "accomplished over six months not several years," and that "the use of urine drug screens would be reasonable and necessary." (*Id.*)

Dr. Koenigsberg's typed reports, submitted by Claimant,[6] document Claimant's treatment from March 15, 2010, which is consistent with what Claimant told Dr. Pharo and was reviewed by Dr. Cicuto. In those records was a report, undated, indicating a letter of medical necessity for lysis of adhesions and explaining why such treatment would benefit Claimant. A June 16, 2016 letter to Claimant's attorney indicated that Claimant's "condition has not changed since the last report that he [had] sent to Claimant's attorney" and that Claimant continues to need "narcotic therapy and intermittent back injections for control." (*Id.* ¶ 18.) WCJ Makin noted there was no evidence of Dr. Koenigsberg examining Claimant prior to the June 16 letter or that Claimant had, during the period under review, undergone any back injections. As for the records of Dr. Koenigsberg that District presented,[7] WCJ Makin noted, save for a few typed reports and the dates on the records, the records were unreadable. Of these records that were readable, a report dated February 4, 2016, reflects that an injection was performed and multiple medications were prescribed.

WCJ Makin summarized the other WCJs' decisions as follows. WCJ Burman's decision,[8] issued on October 21, 2011, addressed a Petition to Review a

---

[6] The summary of these records is in FOF ¶ 18. These records are found at pages 64-80 of the Reproduced Record.

[7] The summary of these records is in FOF ¶ 19. These records are found at Certified Record Item 24.

[8] The summary of this decision is in FOF ¶ 7. WCJ Burman's decision is found at pages 17-22 of the Reproduced Record.

Utilization Review Determination concerning Dr. Koenigsberg's treatment of Claimant. Dr. Cicuto reviewed that treatment, including the prescription of many of the narcotics at issue in this matter, and expressed concern of the overuse of narcotic medication. Dr. Cicuto opined that the narcotics "would no longer be reasonable or necessary after Claimant completed a medical[ly] supervised detoxification." (*Id.* ¶ 7.) Due to the need for Claimant to undergo detoxification, WCJ Burman found "Claimant's continued receipt of drug therapy . . . reasonable and necessary in part." (*Id.*) WCJ Callahan's decision,[9] issued on August 28, 2014, denied the suspension petitions filed by District and John Carr on the basis that Claimant refused to undergo reasonable medical treatment. They asserted that Claimant should have undergone an inpatient or doctor directed detoxification program and, when they offered Claimant such programs, Claimant refused. WCJ Callahan credited Claimant's testimony that he was willing to come off his pain medications as soon as Dr. Koenigsberg tells Claimant he did not need them.

Following her review of the evidence, WCJ Makin did not find Dr. Koenigsberg's reports and records credible or persuasive, noting there were only a few reports that were from the treatment period under review, typed, and legible, one that reflects that Claimant's condition had not changed, and a second that requests to do an interventional procedure on Claimant. (*Id.* ¶ 20.) These records, WCJ Makin found, were "internally inconsistent and erode[] Dr. Koenigsberg's opinion that Claimant's condition has not changed," which WCJ Makin rejected. (*Id.*) WCJ Makin found Dr. Cicuto's current UR Determination credible and persuasive based on his review of numerous medical records, an employee

---

[9] The summary of this decision is in FOF ¶ 8. WCJ Callahan's decision, and the Board's affirmance of that decision, are found at pages 23-39 of the Reproduced Record.

statement, and literature and protocols about the use of opioids on a long-term basis. (*Id.* ¶ 22.) WCJ Makin credited Dr. Pharo's opinions to the extent they corroborated the current UR Determination and "concerns that Claimant's narcotics are subject to being lost, stolen[,] or spilled on the bathroom floor" and lack of pill counts or drug testing. (*Id.* ¶ 21.) WCJ Makin did not credit Dr. Pharo's opinion "that Claimant should continue to receive the narcotic medication subject to a reduction plan" because, WCJ Makin explained, such plans have been consistently "recommended but refused by Claimant." (*Id.*) WCJ Makin found that Claimant's medications had changed since the decisions of WCJs Burman and Callahan, which WCJ Makin found "would obviously come after a change in his condition and thus, Claimant's counsel's argument" that the matter was governed by collateral estoppel was without merit. (*Id.* ¶ 10.)

Based on the credited UR Determination, WCJ Makin held that District met its burden of proving that Dr. Koenigsberg's current prescriptions for opioids and Valium for Claimant are not reasonable or necessary from October 14, 2015, and ongoing. (*Id.* ¶ 23.) The other prescriptions and office visits every three months were reasonable and necessary. (*Id.* ¶ 24.) Citing the medical opinions offered by District and John Carr, WCJ Makin found their contests reasonable. Finally, WCJ Makin denied the Penalty Petition, which was based on Claimant's assertion that no UR determination could be requested since there was no change in his condition. WCJ Makin reasoned that "Claimant's condition has been shown to change by Dr. Koenigsberg's own treatment recommendations" and "the excessive doses of Oxycodone and Valium that Claimant is prescribed consistently coupled with the theft, loss[,] and spilling" of those "medications which require them to be

10

replaced, justifies a review of their prescription." (*Id.* ¶ 26.) Therefore, WCJ Makin held that Claimant did not meet his burden of proving a violation of the Act.

### C. The Board's Opinion

Claimant appealed to the Board, arguing the current UR Determination was barred by res judicata and collateral estoppel under *C.D.G.*, and WCJ Makin erred in ignoring the decisions of WCJs Burman and Callahan, as well as the 2015 UR Determination, in accepting the UR Determination. The Board concluded that the current UR Determination was not barred by res judicata or collateral estoppel. First, the Board observed that WCJ Makin had sustained the objection to the 2015 UR Determination because it had not been offered when the record was open, and, therefore, that determination was not in the record. (Board Op. at 6, 8.) Second, Claimant's reliance on WCJ Callahan's decision was misplaced, the Board concluded, because that decision involved a suspension petition, not a review of the reasonableness and necessity of Claimant's specific opioid prescriptions. (*Id.* at 8.) Last, the Board found that, while WCJ Burman's decision did address the reasonableness and necessity of Claimant's treatment on and after June 14, 2010, and concluded, based on Dr. Cicuto's opinion that Claimant's opioid medications would be no longer reasonable and necessary after the completion of a medically supervised detoxification program, *C.D.G.* was distinguishable due to the amount of time that passed between WCJ Burman's decision in 2011 and the December 2015 UR request filed here. (*Id.* at 8-9.) The Board explained, citing this Court's opinion in *Gary v. Workers' Compensation Appeal Board (Philadelphia School District)*, 18 A.3d 1282, 1287 n.7 (Pa. Cmwlth. 2011), that "the passage of time

11

may affect the reasonableness and necessity of a particular medical treatment, even if the claimant's medical condition had not changed." (*Id.* at 9.)

Claimant further asserted that case law requires District and John Carr to show a change in Claimant's condition in order to request a UR, but they filed the current UR request without showing that change. The Board rejected this argument, noting that WCJ Makin found there was "credible evidence establish[ing] that Claimant's treatment regimen has, in fact changed, indicating a change in condition" since the prior WCJ decisions. (*Id.* at 10.) Citing *Gary*, the Board also noted the passage of time between WCJ Burman's decision and the current UR Determination and explained that "[c]ollateral estoppel is designed to prevent relitigation of issues that have been decided and remained substantially static, factually and legally," which was not the case here. (*Id.*) Finally, finding there was no violation of the Act apparent on the record, the Board found no error in WCJ Makin's denial of the Penalty Petition. Claimant now petitions this Court for review.[10]

## II. Claimant's Appeal to this Court

### A. *The 2015 UR Determination*

Claimant argues that WCJ Makin erred in excluding the 2015 UR Determination because it was presented while the record was open and is relevant to the current UR proceedings. Claimant asserts it was relevant because: in the 2015 UR Determination, Dr. Cicuto found that the December 29, 2014 prescription

---

[10] This Court's "review is limited to determining whether constitutional rights were violated, whether the adjudication is in accordance with the law[,] or whether necessary findings of fact are supported by substantial evidence." *City of Philadelphia v. Workers' Comp. Appeal Bd. (Sherlock)*, 934 A.2d 156, 159 n.5 (Pa. Cmwlth. 2007).

12

of the same opioid medications and Valium at issue in the current period being reviewed, October 14, 2015, and ongoing, was reasonable and necessary; the short amount of time between the 2015 UR Determination, issued in April 2015, and the time period being reviewed in the current UR Determination; and the lack of evidence demonstrating a change in Claimant's condition. According to Claimant, the purpose of applying res judicata and collateral estoppel in UR proceedings, as explained in *C.D.G.*, was to preclude the use of a "constant stream of utilization review requests where the treatment and Claimant's condition remain the same, even though time has passed." (Claimant's Brief (Br.) at 13.)

John Carr and District argue Claimant waived any argument about the exclusion of the 2015 UR Determination based on it being relevant by not raising it in his appeal to the Board. District argues that Claimant did not preserve the issue because, while he generally argued in his appeal to the Board that the exhibit's exclusion was erroneous, he did not argue that the exhibit should have been admitted because it was relevant. (District's Br. at 16-19.) Therefore, District maintains, the current argument based on the relevancy of the 2015 UR Determination is waived. Even if it was not waived, John Carr and District argue that WCJ Makin properly excluded the 2015 UR Determination as not being relevant. Claimant responds that he specifically argued, in his appeal to the Board, that "the WCJ erred in failing to admit a prior Utilization Review of the same treatment that was subject of this Utilization Review," which had been offered during his case in chief. (Claimant's Reply Br. at 1.)

Section 703(a) of the Administrative Agency Law provides that a "party may not raise upon appeal any . . . question not raised before the agency." 2 Pa. C.S. § 703(a). This provision is echoed in Rule 1551(a) of the Pennsylvania Rules

13

of Appellate Procedure, which states that, except in circumstances not applicable here, "[n]o question shall be heard or considered by the court which was not raised before the government unit . . . ." Pa.R.A.P. 1551(a). Thus, an issue not raised before the Board is not preserved for appellate review. *Marx v. Workers' Comp. Appeal Bd. (United Parcel Serv.)*, 990 A.2d 107, 110 (Pa. Cmwlth. 2010). Moreover, in order to properly preserve an issue for an appeal, "a party must **specifically identify** . . . **the particular grounds** being appealed to the Board." *McGaffin v. Workers' Comp. Appeal Bd. (Manatron, Inc.)*, 903 A.2d 94, 100-01 (Pa. Cmwlth. 2006) (emphasis added). The Board's regulation at 34 Pa. Code § 111.11(a)(2) states that an appeal to the Board must include "[a] statement of the particular grounds upon which the appeal is based . . . ."

Claimant's appeal to the Board states, in pertinent part:

- The WCJ did not follow a prior determination when no change in claimant's condition was shown, i.e. the WCJ decision rejected the principles of res judicata and collateral estoppel . . . where defendant[s] had requested a review of treatment that had previously been found reasonable and necessary by two WCJs and a further utilization review . . . ;

- [T]he WCJ erred in failing to admit a prior utilization review of the same treatment that was the subject of this utilization review and that treatment was found to be reasonable and necessary by that prior review . . . [;]

- [T]he WCJ erred in concluding that the offer of a prior utilization review was in regard to motion to reopen the record, when the utilization review was offered as a part of claimant's case in chief;

- [T]he WCJ erred in failing to admit a prior utilization review . . . . .

14

(Claimant's Appeal at 1-2, Certified Record Item 10.) As District and John Carr point out, Claimant does not specifically identify, as a **particular** ground for the Board's review, that WCJ Makin erred in excluding the 2015 UR Determination as not being relevant. Claimant's appeal does not refer to that determination as being relevant or that it had been excluded as not being relevant. Therefore, the Board did not address that issue in its Opinion. Accordingly, we agree that Claimant has not properly preserved his challenge to WCJ Makin's decision excluding the 2015 UR Determination on relevancy grounds.[11]

## B. Res Judicata/Collateral Estoppel

Claimant next argues the current UR Determination is barred under res judicata and collateral estoppel. Claimant asserts the Decisions of WCJs Burman and Callahan[12] prohibit future challenges to the reasonableness and necessity of Dr. Koenigsberg's treatment, particularly the prescription of narcotic pain medication to treat Claimant's work injury. According to Claimant, in the 2014 Decision denying the suspension petitions filed by District and John Carr, WCJ Callahan

---

[11] We agree with Claimant's argument that WCJ Makin erred in excluding the 2015 UR Determination due to it being offered after the record was closed because Claimant offered that UR Determination for admission at the July 25, 2016 hearing, where it was excluded as not being relevant. Even if Claimant had preserved his relevancy challenge and the 2015 UR Determination had been considered, contrary to Claimant's arguments, the treatment reviewed in the 2015 UR Determination does not appear to be the same as that reviewed in the current UR Determination. The 2015 UR Determination addressed only one day of treatment, December 29, 2014, rather than the ongoing treatment at issue in the current UR Determination. Also, in the time since the 2015 UR Determination and during the review period for the current UR Determination, it appears that Dr. Koenigsberg added Oxycodone 15 mg 3 times a day as needed to Claimant's daily regimen, thereby **increasing** the amount of that medicine Claimant could take.

[12] Because of our decision regarding the exclusion of the 2015 UR Determination, we will not address Claimant's arguments based on that determination.

found credible Dr. Koenigsberg's testimony that "[C]laimant continues to have chronic pain; [C]laimant will have pain **for the rest of his life** and that pain will need to be controlled by narcotic analgesics . . . ." (Claimant's Br. at 16 (quoting WCJ Callahan Decision, Finding of Fact ¶ 12) (emphasis added).) Claimant contends the nature of his condition, and the need to use narcotic analgesics, was a contested issue in the suspension petitions and, therefore, WCJ Callahan's finding on this point was determinative and binding on future WCJs. As neither District nor John Carr proved that Claimant experienced a change in condition, Claimant argues *C.D.G.* applies and bars the current UR Determination.

District and John Carr respond that the decisions of WCJs Burman and Callahan do not act as res judicata and collateral estoppel to preclude future challenges to the reasonableness and necessity of Dr. Koenigsberg's treatment of Claimant's work injury. They assert that collateral estoppel does not apply because these decisions dealt with different issues: WCJ Callahan's 2014 Decision addressed the suspension petitions based on refusal of medical treatment, not the reasonableness and necessity of Dr. Koenigsberg's treatment, and WCJ Burman's 2011 Decision addressed the reasonableness and necessity of Dr. Koenigsberg's treatment for an entirely different time period and dosages of the medications. Moreover, they maintain WCJ Makin found that there had been a change in Claimant's condition since the prior WCJs' decisions, as evidenced by Dr. Koenigsberg's change in Claimant's prescription medications. Finally, they argue it is not always necessary to show a change in condition in order to request a UR, as, under *Gary*, a lapse of time is sufficient, particularly when dealing with the potential harm that can result from the long term use of opioids. *See Troutman v. Workers' Comp. Appeal Bd. (Norristown Ford)* (Pa. Cmwlth., No. 724 C.D. 2014,

16

filed April 10, 2015), slip op. at 17-18 (explaining, in rejecting an unreasonable contest claim in a UR petition proceeding, that where a treatment may produce negative effects, "it [is] not unreasonable for [the employer] to have questioned the ongoing utility of the treatments, as [the employer] would ultimately be liable for any potential negative consequences that could occur").[13] Here, in addition to the change in Claimant's condition, there was a lapse of time between the current UR Determination and the decisions of WCJs Burman and Callahan, which District and John Carr argue is sufficient to prevent the application of res judicata and collateral estoppel.

We begin by observing that when a UR petition is filed, the burden of proving that the medical treatment is not reasonable or necessary is on the employer, regardless of which party files the petition. *Topps Chewing Gum v. Workers' Comp. Appeal Bd. (Wickizer)*, 710 A.2d 1256, 1260-61 (Pa. Cmwlth. 1998). Here, acting as the fact finder and sole arbiter of credibility and evidentiary weight, *Greenwich Collieries v. Workmen's Compensation Appeal Board (Buck)*, 664 A.2d 703, 706 (Pa. Cmwlth. 1995), WCJ Makin credited Dr. Cicuto's opinions that Dr. Koenigsberg's ongoing prescription of opioid medications and Valium were not reasonable and necessary. She further credited Dr. Pharo's opinions to the extent that they were consistent with the current UR determination, which were, relevantly, that the dosages prescribed to Claimant were more than three times the highest dosage approved by the American Medical Association and that using urine screens to ensure proper usage was reasonable and necessary, but was

---

[13] *Troutman* is cited as persuasive authority pursuant to Section 414(a) of the Commonwealth Court's Internal Operating Procedures, 210 Pa. Code § 69.414(a).

17

not done.  Such credited evidence constitutes substantial evidence[14] that supports WCJ Makin's finding that Dr. Koenigsberg's ongoing prescriptions of opioids and Valium are not reasonable and necessary and the denial of the UR Petition.  Thus, unless the current UR Determination is barred by collateral estoppel or res judicata, that decision will be upheld.

In *C.D.G.*, we described the application of collateral estoppel to a UR proceeding,[15] as follows:

> Collateral estoppel or issue preclusion is designed to prevent relitigation of issues which have once been decided and have remained substantially static, factually and legally.  It forecloses relitigation in a later action of an issue of fact or law which was actually litigated and which was necessary to the original judgment. For collateral estoppel to apply, it must be shown that (1) the issue decided in the prior case is identical to the one presented in the later case; (2) there was a final judgment on the merits; (3) the party against whom the doctrine is asserted was a party or in privity with a party in the prior case and had a full and fair opportunity to litigate the issue and; (4) the determination in the prior proceeding was essential to the final judgment.

*C.D.G.*, 702 A.2d at 875 (internal quotation marks, citations, and footnote omitted).  Analogizing a UR proceeding to other situations in the WC area where subsequent petitions can be filed, we explained

> there has to be more than the passage of time for collateral estoppel not to apply.  A party seeking to alter benefits must prove that there has been a change in physical condition since the last legal proceeding

---

[14] "Substantial evidence is such relevant evidence a reasonable mind might accept as adequate to support a conclusion."  *WAWA v. Workers' Comp. Appeal Bd. (Seltzer)*, 951 A.2d 405, 407 n.4 (Pa. Cmwlth. 2008).

[15] Although the parties here refer to applying res judicata and collateral estoppel, we note that while the Court in *C.D.G.* discussed the law of both principles, it ultimately analyzed the matter under collateral estoppel.  We will do the same here.

18

addressing the nature and extent of the injury . . . . The reasoning behind such a standard being that otherwise a disgruntled employer (or claimant) could repeatedly attack what [they] consider[] an erroneous decision of a [WCJ] by filing [additional] petitions for modification based on the same evidence ad infinitum in the hope that one [WCJ] would finally decide in [their] favor.

*Id.* at 876 (quotation marks, citations, and emphasis omitted) (fourth alteration in the original). Accordingly, we held in *C.D.G.* that Section 306(f.1)(6)(i) of the Act, 77 P.S. § 531(6)(i), "does not change the general rule that there has to be a change in claimant's physical condition from the last proceeding for collateral estoppel not to apply." *Id.* at 877. While it does allow for a subsequent proceeding to "be brought for new and different treatment . . . if the condition worsens from the last" UR, "[i]t does not vitiate the application of the doctrine of collateral estoppel to allow a constant stream of utilization requests where the treatment and claimant's condition remain the same even though time has" passed. *Id.*

In *Gary*, we considered *C.D.G.* in a situation where there was five and a half years between UR requests seeking review of a claimant's chiropractic care. *Gary*, 18 A.3d at 1284, 1287. The first UR determination found the care reasonable and necessary, and the second UR determination found it was not based on the fact that "there ha[d] been no significant or ongoing improvement in [the c]laimant's symptoms." *Id.* at 1284. The claimant filed a UR petition, which the WCJ denied because the records showed that her condition had not improved despite the many years of the challenged treatment. After the Board affirmed, the claimant appealed to this Court, arguing that the second UR determination was barred by collateral estoppel under *C.D.G.* We affirmed, agreeing with the employer that it had established that the claimant's condition was getting worse and, therefore, the necessary change of condition to avoid the application of collateral estoppel was

19

present. *Gary*, 18 A.3d at 1287. We also noted that "[t]he substantial difference in the length of time between UR requests satisfie[d]" our "concern that UR 'does not vitiate the application of the doctrine of collateral estoppel to allow a constant stream of utilization requests where the treatment and claimant's condition remain the same even though time has pas[sed]' while an employer hopes that a WCJ will finally find in its favor." *Id.* (quoting *C.D.G.*, 702 A.2d at 876-77 (last alteration in *Gary*)). Finally, we observed

> a UR petition is different from a termination petition because, unlike a termination petition that is predicated on a change in [the c]laimant's physical condition, a UR petition is predicated on the reasonableness and necessity of certain medical treatment. As such, in a UR proceeding, **the passage of time may affect the reasonableness and necessity of a particular medical treatment, even if the claimant's medical condition has not changed**. For example, surgery may not be a reasonable and necessary form of treatment for a claimant soon after a claimant is injured, but may become reasonable and necessary later if other less invasive forms of treatment have not been beneficial. Similarly, it is possible that a treatment may be initially reasonable but, if it does not prove to be beneficial over time, a different treatment may become more appropriate.

*Id.* at 1287 n.7 (emphasis added).

Applying either *C.D.G.* or *Gary* to the present matter, the decisions of WCJs Burman and Callahan do not bar the current UR Determination. District and John Carr have established that Claimant's condition has changed since those decisions and that sufficient time has passed to satisfy this Court's concern that allowing the current UR Determination would not vitiate the rationale set forth in *C.D.G.* We address each decision in turn.

First, WCJ Burman's 2011 Decision addressed Claimant's challenge to a UR determination by Dr. Cicuto of Dr. Koenigsberg's prescription of a variety of narcotic medications for Claimant on and after June 14, 2010. (WCJ Burman

20

Decision, Finding of Fact ¶ 2, R.R. at 20.) Dr. Cicuto opined that Claimant's "continu[ed] use of opioid medications[,] which are highly addictive[] and can have negative [e]ffects on other body systems, were no longer reasonable or necessary." (*Id.*) Dr. Cicuto qualified his opinion with the observation that these medications "would no longer be reasonable or necessary **after completion of medically supervised detoxification**." (*Id.* (emphasis added).) Acknowledging this caveat by Dr. Cicuto, WCJ Burman found that "stopping the narcotic[] medications could have deleterious [e]ffects, unless done under proper medical supervision or transference to alternative drugs." (*Id.*) Finally, WCJ Burman credited Dr. Koenigsberg's reports in which Dr. Koenigsberg indicates that he "believe[d] he was providing Claimant with **a supervised detoxification program**." (*Id.* ¶ 4 (emphasis added).) Citing these opinions, WCJ Burman held that "[b]oth [Dr. Cicuto] and [Dr. Koenigsberg] agreed on the continuing need [for narcotic medications] **until weaning is completed**" and that, while Dr. Koenigsberg's "weaning schedule seems a bit slow, [the WCJ] w[ould] not tamper with the decisions concerning prescription medication made by a treating physician." (WCJ Burman Decision, Conclusion of Law ¶ 2 (emphasis added).)

WCJ Burman's **2011** Decision addressed Dr. Koenigsberg's ongoing prescription of narcotic pain medication for Claimant on and after **June 14, 2010**, which was **more than five years before** the treatment period addressed by Dr. Cicuto in **the current UR Determination**, October 14, 2015, and onward. As in *Gary*, "[t]he substantial difference in the length of time between UR requests satisfies this Court's concern that [the] UR 'does not vitiate the application of the doctrine of collateral estoppel . . . .'" 18 A.3d at 1287 (quoting *C.D.G.*, 702 A.2d at 876-77). Moreover, as WCJ Makin found and is supported by the record,

21

Claimant's prescriptions have changed since WCJ Burman's Decision, which we agree is evidence of a change in Claimant's condition that would support a new UR determination under *C.D.G.* (WCJ Makin Decision, FOF ¶ 10.) Finally, WCJ Burman's Decision did not, as Claimant argues, wholly endorse Claimant's **ongoing** use of narcotic pain medicine. It did the opposite, finding that Claimant had to complete medically supervised detoxification, and be weaned off of that ongoing use, and, once that occurred, those medications would not be reasonable and necessary. Given the passage of time and change in Claimant's condition, the issues in the current UR Determination and WCJ Burman's Decision are not identical and, therefore, WCJ Makin did not err in concluding that WCJ Burman's Decision did not bar the current UR Determination.

Second, WCJ Callahan's 2014 Decision addressed District's and John Carr's suspension petitions, filed in December 2012, in which they sought a suspension of Claimant's benefits due to his refusal of reasonable medical treatment in the nature of a detoxification program. (WCJ Callahan Decision, Finding of Fact ¶ 1.) While there was medical evidence presented, that evidence focused on what benefit the detoxification program would or would not have on Claimant. (*Compare id.* ¶ 4 (John Carr's expert opinion regarding the benefit of the detoxification program was to improve Claimant's function and quality of life), *with* ¶ 9 (Dr. Koenigsberg's opinion that there was no situation in which detoxification would benefit Claimant).) In rendering his opinion, Dr. Koenigsberg explained he has reduced Claimant's narcotic medication but that "Claimant [would] have pain for the rest of his life and the pain will need to be controlled by narcotic analgesics," which WCJ Callahan credited while also recognizing the concern regarding the ongoing use of such medications. (*Id.* ¶¶ 9, 12.) WCJ Callahan denied the suspension petitions

22

because John Carr and District did not meet their burden of proof on the suspension petition, where their medical expert did not opine that "the detoxification program would result in decreasing [Claimant's] disability or restoring [his] earning power" or would "enhance Claimant's prospects for gainful and fulfilling employment." (*Id.* ¶ 12; WCJ Callahan, Conclusion of Law ¶ 2.)

WCJ Callahan's 2014 Decision resolved the question of whether Claimant had "forfeit[ed] his right to benefits when he refuse[d] reasonable medical services for his work-related injuries." *Dep't of Labor and Indus., Bureau of Workers' Comp. v. Workers' Comp. Appeal Bd. (Exel Logistics)*, 890 A.2d 1045, 1049 (Pa. 2005). To do that, John Carr and District had to show that Claimant "refuse[d] reasonable medical or surgical procedures that would improve his condition and lessen his disability." *Lisanti Painting Co. v. Workers' Comp. Appeal Bd. (Starinchak)*, 973 A.2d 464, 469 (Pa. Cmwlth. 2009);[16] *see also Kneas v. Workmen's Comp. Appeal Bd. (Cross Country Clothes)*, 685 A.2d 248, 250 (Pa. Cmwlth. 1996) ("[T]reatment is reasonable . . . [if] it is highly probable that the medical treatment will cure the claimant's health problem; and . . . enhance the claimant's prospects for gainful and fulfilling employment."). While medical evidence was presented and WCJ Callahan did credit the testimony of Dr. Koenigsberg that Claimant relies upon now, the medical evidence was focused on the benefits of the proposed detoxification program in which Claimant refused to enroll and whether those benefits made the programs reasonable medical treatment

---

[16] Suspensions for this reason are pursuant to Section 306(f.1)(8) of the Act, 77 P.S. § 531(1)(8) ("If the employe shall refuse reasonable services of health care providers, surgical, medical and hospital services, treatment, medicines and supplies, he shall forfeit all rights to compensation for any injury or increase in his incapacity shown to have resulted from such refusal.").

for the purpose of suspending Claimant's benefits. The reasonableness and necessity of Dr. Koenigsberg's ongoing prescriptions of opioids was neither at issue in the suspension petitions, nor would it have been essential to WCJ Callahan's final judgment denying the suspension petitions. Accordingly, WCJ Makin did not err in concluding that WCJ Callahan's Decision did not bar the current UR Determination.

We recognize that the serial use of URs is not sanctioned by our precedent. But, we are also cognizant of the concerns and dangers of the long term use of opioids, as reflected in the current UR Determination of Dr. Cicuto and report of Dr. Pharo. (WCJ Makin Decision, FOF ¶¶ 15-17.) Such medications, per Dr. Cicuto, are intended as the "last resort treatment for chronic non cancer pain," (*Id.* ¶ 15), but it appears that Claimant is using these medications almost exclusively to treat his pain. Given the change in the way these medications are being used in the medical community, as reflected in Dr. Pharo's observation of the current American Medical Association guidelines for those medications, and Dr. Cicuto's indication that there has "been a significant change in the use of opioids in chronic pain management," (R.R. at 6, 90), it is not unreasonable for an employer to question the ongoing, long term prescription of opioids to claimants. As we stated in *Troutman*, "it [is] not unreasonable for [the employer] to have questioned the ongoing utility of the treatments, as [the employer] would ultimately be liable for any potential negative consequences that could occur." Slip op. at 17-18. Contrary to Claimant's assertions, the decisions of WCJs Burman and Callahan did not authorize Dr. Koenigsberg to continue to prescribe these medications, unchallenged, forever. Rather, it is clear from those decisions that it was intended for Claimant to be weaned off of these medications, a process which WCJ Makin

24

explained as being "consistently . . . recommended but refused by Claimant." (FOF ¶ 21.) For all of these reasons, we discern no error in WCJ Makin's denying Claimant's UR Petition.

## C. Penalties and Unreasonable Contest

Claimant last argues that the conduct he challenges here, the filing of repeated UR requests for treatment that has already been found to be reasonable and necessary without showing a change in his condition, violates the Act under *C.D.G.* Therefore, Claimant asserts, WCJ Makin should not have denied the Penalty Petition, and District's and John Carr's challenge to the UR Petition was unreasonable, subjecting them to unreasonable contest attorneys' fees under Section 440(a) of the Act, 77 P.S. § 996(a).[17] District responds that WCJ Makin's Decision denying Claimant's UR Petition and Penalty Petition should be affirmed because it is without error, well-reasoned, and supported by substantial evidence. Because WCJ Makin properly denied the UR Petition, District asserts, Claimant did not meet his burden of proving a violation of the Act. John Carr similarly argues that because WCJ Makin found there was a change in Claimant's condition and denied the UR Petition, WCJ Makin properly found the contest of the UR Petition reasonable and correctly denied the Penalty Petition.

Section 435(d) of the Act allows for the imposition of a penalty against an employer if the employer violates the provisions of the Act or its rules or regulations. 77 P.S. § 991(d).[18] In a penalty petition proceeding, the claimant bears the burden of proving that a violation of the Act or its regulations has occurred. *Dixon v. Workers' Comp. Appeal Bd. (Medrad, Inc.)*, 134 A.3d 518, 525

---

[17] Added by Section 3 of the Act of February 8, 1972, P.L. 25, *as amended*.
[18] *Id.*

25

(Pa. Cmwlth. 2016). The assessment and amount of penalties imposed, if any, is within the WCJ's discretion, and the violation of the Act or its regulations must appear in the record in order for a penalty to be appropriate. *Id.* If the claimant meets this initial burden, the burden shifts to the employer to show that it did not violate the Act. *Id.* Additionally, Section 440(a) of the Act addresses attorney's fees and provides, in relevant part:

> In any contested case . . . the [claimant] . . . in whose favor the matter at issue has been finally determined . . . shall be awarded . . . a reasonable sum for costs incurred for attorney's fee . . . [p]rovided[ t]hat cost for attorney fees may be excluded when a reasonable basis for the contest has been established by the employer . . . .

77 P.S. § 996(a).

Claimant's arguments are premised on this Court agreeing with his contentions that WCJ Makin erred in denying his UR Petition. However, having found no such error, Claimant has not established that John Carr or District has violated the Act by requesting an improper UR. Moreover, as John Carr's and District's positions were affirmed, their contest was reasonable and attorney's fees are unavailable under Section 440 of the Act. Accordingly, there was no error or abuse of discretion in denying the Penalty Petition and request for unreasonable contest attorney's fees.

### III.     Conclusion

For the foregoing reasons, we affirm.

_____
**RENÉE COHN JUBELIRER,** Judge

26

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Daniel Fanning,                              :
                Petitioner         :
                                           :
             v.                              :  No. 992 C.D. 2018
                                           :
Workers' Compensation Appeal                 :
Board (Lower Merion School District          :
and John Carr Electric and School            :
District Insurance Consortium and            :
Harleysville Insurance Company),             :
                Respondents        :

# **O R D E R**

**NOW**, May 2, 2019, the Order of the Workers' Compensation Appeal Board, entered in the above-captioned matter, is **AFFIRMED**.

 

_____
**RENÉE COHN JUBELIRER,** Judge